# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1113

_____

Mark S. Guilliams,                          *
                                            *
            Appellant,                      *
                                            *   Appeal from the United States
      v.                                    *   District Court for the
                                            *   Western District of Missouri.
Jo Anne B. Barnhart, Commissioner,          *
Social Security Administration,             *
                                            *
            Appellee.                       *

_____

Submitted: September 17, 2004
Filed: January 4, 2005

_____

Before COLLOTON, HEANEY, and HANSEN, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Mark Guilliams applied for disability insurance benefits and supplemental security benefits under Titles II and XVI of the Social Security Act. The Commissioner of the Social Security Administration denied his application. An administrative law judge ("ALJ") determined that although Guilliams's bilateral carpal tunnel syndrome and other impairments were, in combination, medically severe, Guilliams had the residual functional capacity ("RFC") to perform jobs that exist in substantial numbers in the national and regional economy. The Social

Security Appeals Council denied review, and the district court[1] affirmed the decision of the Commissioner.  We affirm.

## I.

We review *de novo* the district court's judgment upholding the denial of social security benefits.  *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004).  In reviewing the district court's decision, we consider whether the ALJ's determination is supported by substantial evidence on the record as a whole.  *Id*.  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the ALJ's determination.  *Sultan v. Barnhart*, 368 F.3d 857, 862 (8th Cir. 2004).  We consider evidence that supports the ALJ's decision as well as evidence that detracts from it, but even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole. *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995).  We do not re-weigh the evidence presented to the ALJ, *Baldwin v. Barnhart*, 349 F.3d 544, 555 (8th Cir. 2003), and we defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

## II.

The Commissioner follows a familiar five-step process to determine whether a claimant is disabled.  *See generally* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  At step four, the ALJ determines the claimant's RFC, which is defined as what a claimant "can still do despite [his or her]

---

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). In determining a claimant's RFC, the ALJ must evaluate his or her credibility and take into account all relevant evidence. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 20 C.F.R. §§ 404.1545, 416.945.

Guilliams argues that the ALJ incorrectly determined that his RFC included the ability to do some types of "light work" as defined in the Social Security regulations. *See* 20 C.F.R. §§ 404.1567(b); 416.967(b). He alleges that, in reaching this conclusion, the ALJ improperly discredited his complaints of pain and disregarded the evidence provided by one of his examining physicians. We conclude that the ALJ's determination that Guilliams's complaints of pain were exaggerated was supported by substantial evidence, and that he gave sufficient weight to the evidence of Guilliams's examining physicians.

A claimant's subjective complaints may be discounted if there are inconsistencies in the record as a whole. 20 C.F.R. §§ 404.1529, 416.929; *McKinney v. Apfel*, 228 F.3d 860, 864 (8th Cir. 2000); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In evaluating subjective complaints, however, the ALJ must consider objective medical evidence, as well as any evidence relating to the so-called *Polaski* factors, namely: (i) a claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) dosage, effectiveness, and side effects of medication; and (v) functional restrictions. *Polaski*, 739 F.2d at 1322. In rejecting a claimant's complaints of pain as not credible, we expect an ALJ to "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003).

We believe that substantial evidence supports the ALJ's decision to discount Guilliams's claims of disabling pain. Guilliams complained of numbness and tingling in his hands, (R. at 204), occasional pain in his heels, (R. at 317), and chronic pain

in his wrists, arms, back, and legs. (R. at 204, 306). Guilliams alleged in particular that he suffered from severe back pain that radiated into both legs. (R. at 306). The ALJ concluded, however, that Guilliams's complaints of pain were inconsistent with substantial medical evidence and other evidence.

During several examinations by a treating physician, Kam-Fai Pang, M.D., Guilliams appeared to be in no significant distress. (R. at 293, 306, 317). One such examination revealed that Guilliams had normal curvature of the spine and lacked any paraspinal muscle spasms or tender points. (R. at 306). A subsequent MRI confirmed that Guilliams's lumbar spine had a largely normal alignment. (R. at 224). Dr. Pang believed, in fact, that his examination of Guilliams was suggestive of symptom magnification. (R. at 307).

An earlier examination by Allen J. Parmet, M.D., a state consulting physician, also was inconsistent with Guilliams's complaints of disabling pain. Dr. Parmet recorded "some discrepancies in the physical examination that call the degree of restriction into question." (R. at 206). Specifically, Guilliams's "grip strength diminishment and restricted range of motion, particularly [in] the right [hand]," was "in contrast with the maintenance of muscle mass and recent use of his hands." (*Id.*).

In addition to the objective medical evidence, an analysis of the *Polaski* factors reveals inconsistencies between Guilliams's allegations of pain and the evidence in the record. Significant daily activities may be inconsistent with claims of disabling pain, *see Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001), and Guilliams testified that he performed household chores such as cooking, laundry, and vacuuming. (R. at 33, 136). An examining physician, moreover, noted that Guilliams's hands were calloused and greasy at the time of his examination (more than six weeks after the alleged onset of his disability), indicating significant daily activities. (R. at 206).

-4-

Other *Polaski* factors suggest additional inconsistencies. Evidence of effective medication resulting in relief, for example, may diminish the credibility of a claimant's complaints. *See Rose v. Apfel*, 181 F.3d 943, 944 (8th Cir. 1999). Guilliams admitted at his hearing that recent medication had relieved his pain. (R. at 41). A failure to follow a recommended course of treatment also weighs against a claimant's credibility. *Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001). Guilliams did not take advantage of Dr. Pang's offer to refer him to a podiatrist in response to Guilliams's complaints of heel pain. (R. at 317). Finally, Guilliams's allegations regarding functional restrictions were not consistent with the record evidence. Guilliams alleged debilitating back pain, but, as noted above, he performed numerous household chores. Although Guilliams brought a cane to his examination by Dr. Pang, the doctor noted that the cane was not necessary for Guilliams's ambulation. (R. at 317). The inconsistencies between Guilliams's allegations and the record evidence provide sufficient support for the ALJ's decision to discredit Guilliams's complaints of pain.

The ALJ did not, as Guilliams alleges, simply substitute his opinion for medical evidence in determining Guilliams's RFC. RFC is a medical question, and an ALJ's finding must be supported by some medical evidence. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). The ALJ, however, still "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The ALJ here relied on evidence in the record that suggested Guilliams was capable of considerable physical activity despite his carpal tunnel and other impairments. When Guilliams was released from the hospital following a surgery to repair a hernia in July 2000, for example, John Webb, M.D., the surgeon who had performed the operation, specified that Guilliams was "not limited from work." (R. at 233). Guilliams's examining physicians consistently noted an absence of muscle atrophy and muscle spasms, (R. at 306), only slight loss of range of motion, (R. at 209, 313), and largely unimpaired reflexes (R. at 206). Dr. Parmet, an occupational specialist, (R. at 206),

concluded from his examination that Guilliams was capable of performing light work. (*Id.*).   This and other evidence provides substantial support for the ALJ's determination of Guillaims's RFC.

Guilliams contends that the ALJ failed to give sufficient weight to the evidence of Harry G. Miller, M.D., an orthopedic surgeon, who opined that Guilliams had "physical limitations" and was "physically disabled f[rom] gainful labor-type employment." (R. at 315).  Guilliams argues that, as the diagnosis of a specialist, Dr. Miller's evidence is entitled to more weight than the ALJ accorded it.  It is true that opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists.  *See* 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). Physician opinions that are internally inconsistent, however, are entitled to less deference than they would receive in the absence of inconsistencies.  *See Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996).  Dr. Miller's report contained several inconsistencies.  While stating that Guilliams was "totally disabled," the report also finds that he "would be an excellent candidate for vocational rehabilitation evaluation."  (R. at 315). The report also noted that Guilliams's "[m]usculature is of good quality in his upper extremities," (R. at 313), yet recommended "total limitations in lifting and carrying."  (R. at 315).  We agree with the district court that the inconsistencies in Dr. Miller's report justify the ALJ's determination that the report's conclusion was outweighed by the other record evidence.

III.

Guilliams also argues that the ALJ's step-five determination that he could perform work that exists in significant numbers within the regional and national economies is unsupported by substantial evidence.  The issue at step five is "whether the claimant is able to perform other work in the national economy in view of [his or] her age, education, and work experience." *Harris*, 356 F.3d at 929.  The ALJ relied

on testimony from a vocational expert in answering this question in the affirmative. (R. at 44-48). The Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers. *See* 20 C.F.R. §§ 404.1566(e), 416.966(e); *Long v. Chater*, 108 F.3d 185, 188 (8th Cir.1997).

Guilliams alleges that the vocational expert's testimony does not constitute substantial evidence because it was elicited by an improper hypothetical question. A hypothetical question is properly formulated if it sets forth impairments "supported by substantial evidence in the record and accepted as true by the ALJ." *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). Guilliams argues that the hypothetical question was erroneous because it did not contain any reference to his allegations of pain. Discredited complaints of pain, however, are properly excluded from a hypothetical question so long as the ALJ had reason to discredit them. *See Tucker v. Barnhart*, 363 F.3d 781, 784 (8th Cir. 2004). Here, as discussed above, there was substantial evidence to support the ALJ's determination that Guilliams's complaints of pain were not credible. Therefore, they were properly excluded from the hypothetical question on which the ALJ relied.

Guilliams also challenges the ALJ's hypothetical question to the vocational expert on the ground that it improperly assumed the category of work that Guilliams could perform. An ALJ may not merely "pose[] a generalized hypothetical question to [a] vocational expert which assume[s]" a claimant has the physical capacity to perform a given category of work. *McGhee v. Harris*, 683 F.2d 256, 259 (8th Cir. 1982). Guilliams complains that in this case, the ALJ began his question with an improper assumption, to wit: "If I were to find that Mr. Guilliams was restricted to light work . . . ." (R. at 45).

Hypothetical questions that assume a claimant is capable of performing a category of work are problematic because they often result in a failure to create a

record showing that "the vocational expert considered the particular individual disabilities of the claimant in evaluating [his] ability to perform alternative employment." *McGhee*, 683 F.3d at 259. At Guilliams's hearing, however, this was not the result of the ALJ's hypothetical question. The ALJ's hypothetical continued on from its initial assumption to specify in great detail Guilliams's impairments, as follows:

> If I were to find that Mr. Guilliams was restricted to light work, and that he was limited as far as lifting is concerned -- occasionally could lift up to 20 pounds, although frequently would be able to lift 10 pounds[, that he] could be on his feet the better part of the day standing or walking . . . [b]ut has problems with his hands stemming from carpal tunnel of a mild . . . to moderate [nature] that would affect him . . . are there jobs that could be done by [Guilliams]?

(R. at 45). The hypothetical's initial assumption thus was not fatal to its propriety in this case because it otherwise "precisely set out the claimant's particular physical and mental impairments." *Simonson v. Schweiker*, 699 F.2d 426, 430 (8th Cir. 1983) (internal quotation and citation omitted). Because the vocational expert was presented with a proper hypothetical, her testimony that there were significant numbers of jobs that Guilliams could perform despite his limitations constitutes substantial evidence supporting the ALJ's determination that Guilliams was not disabled. *See Tucker*, 363 F.3d at 784.

The judgment of the district court is affirmed.

_____