# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 05-1097

_____

Norman P. Pelkey,                              *
                                               *
                    Appellant,                 *
                                               *      Appeal from the United States
          v.                                   *      District Court for the Eastern
                                               *      District of Arkansas.
Jo Anne B. Barnhart,                           *
Commissioner, Social Security                  *
Administration,                                *
                                               *
                    Appellee.                  *


_____

Submitted: October 14, 2005
Filed: January 3, 2006
_____

Before ARNOLD, MURPHY and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Norman P. Pelkey appeals the decision of the district court[1] affirming the administrative law judge's ("ALJ") denial of his application for disability insurance benefits under Title II of the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423.

_____

[1]The Honorable J. Thomas Ray, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

Because the decision of the ALJ is supported by substantial evidence on the record as a whole, we affirm.

## I. BACKGROUND

Pelkey claims that he has been disabled since January 22, 2001, due to a spinal disc condition associated with arthritis. Pelkey was 61 years old at the time of the administrative decision. He has a high school diploma and an associate's degree in management. Pelkey began experiencing lower back pain after injuring his back in 1972 while serving in the Air Force. He was honorably discharged in 1985, and from then until 2001 he worked as a medical clinic manager.

Pelkey's claim for disability insurance benefits was denied initially, upon reconsideration and after a hearing before the ALJ. The ALJ evaluated Pelkey's disability claim according to the five-step sequential evaluation process prescribed by the Social Security regulations. *See Goff v. Barnhart*, 421 F.3d 785, 789-90 (8th Cir. 2005); 20 C.F.R. § 404.1520(a)-(f). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff*, 421 F.3d at 790 (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004)).

At the first step of the analysis, the ALJ examines the claimant's work activity. If the claimant is gainfully employed, then he is not disabled within the meaning of the Social Security Act. The ALJ concluded that Pelkey had not performed substantial gainful activity since his alleged onset date of January 22, 2001. Second, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments, where severe impairment is defined as one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The ALJ found that Pelkey had degenerative joint disease of the cervical spine and of the lumbar spine. Third, the

-2-

ALJ determines based on the medical evidence whether the severe impairments meet the criteria of a listed impairment which is presumed to be disabling. The ALJ concluded that they did not. After assessing the claimant's residual functional capacity ("RFC"), at the fourth step the ALJ considers whether the claimant can do his past relevant work based on his RFC. *See* 20 C.F.R. § 404.1545 (defining RFC as "the most [a claimant] can still do despite" his "physical or mental limitations"). The ALJ concluded that Pelkey retained the RFC to frequently lift and/or carry up to 10 pounds, occasionally lift and/or carry up to 20 pounds, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. *See* 20 C.F.R. § 404.1567(b) (defining light work). Based on the RFC, the ALJ found that Pelkey was able to perform his sole past work as a medical clinic manager and, therefore, was not disabled under the Social Security Act. Thus, the ALJ did not reach the fifth step of the analysis.

The Social Security Appeals Council declined review, making the ALJ's determination the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The district court affirmed the decision of the Commissioner. Pelkey appeals, arguing that the ALJ erred in discrediting Pelkey's subjective complaints of pain and in failing to address a disability determination by the Veterans Administration ("VA").

## II. DISCUSSION

We review de novo a district court's decision upholding the denial of social security benefits. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). This Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. *Id.* "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Goff*, 421 F.3d at 789 (quoting *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). We consider the whole record, including evidence that supports as well

as detracts from the Commissioner's decision, and we will not reverse simply because some evidence may support the opposite conclusion. *Id.* Furthermore, "we defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams*, 393 F.3d at 801.

Pelkey first argues that the ALJ failed to adequately explain his adverse credibility finding as to Pelkey's complaints of pain. In evaluating a claimant's subjective complaints of pain, the "absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ also examines the claimant's prior work record and observations of third parties and physicians relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Id.* at 1322; *see also Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). Although "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole," *Polaski*, 739 F.2d at 1322, the ALJ "must give reasons for discrediting the claimant," *Strongson*, 361 F.3d at 1072.

In this case, "[a]lthough the ALJ did not explicitly discuss each *Polaski* factor in a methodical fashion, he acknowledged and considered those factors before discounting [the claimant's] subjective complaints of pain." *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996); *see also Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered."). The ALJ listed the *Polaski* factors and then stated that he had "carefully consider[ed] all the evidence of record, specifically including the credibility factors set forth above." After discussing the evidence, the ALJ concluded that the objective medical evidence and the record as a whole were inconsistent with Pelkey's testimony that his pain was totally disabling.

In assessing Pelkey's credibility, the ALJ first commented on Pelkey's excellent work record. He then recounted the daily activities Pelkey was able to perform, such as household chores, mowing the lawn, raking leaves, shopping for groceries and driving a car. In addition, the ALJ recounted Pelkey's testimony that he could not play golf or tennis. The record also contains Pelkey's testimony that he visited with friends on occasion and attended church. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001) ("Inconsistencies between subjective complaints of pain and daily living patterns diminish credibility."); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (holding that the claimant's daily activities of visiting neighbors, cooking meals, doing laundry and attending church were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).

Regarding intensity of pain, the ALJ stated that Pelkey testified that he "has shooting, radiating pain in his neck and arm that has been diagnosed as arthritis." Pelkey also described to Dr. Thai Ky in 2001 that he experienced a dull aching pain upon walking or prolonged standing, but the pain was absent at rest. In 2003, Pelkey reported to Dr. William Hurst that he was having pain in his neck, arm and back. With respect to functional restrictions, the ALJ noted Pelkey's testimony that he can stand for only 30 minutes and walk for only 15-20 minutes, that he avoids lifting, and that his upper back is aggravated by reaching or stretching. In addition, the ALJ noted that Pelkey participated in the range of daily activities described above, that no physician indicated that Pelkey was precluded from all work, and that the state agency medical consultant determined in January 2002 that Pelkey was able to do work at the light exertional level.

In further support of his credibility determination, the ALJ noted that Pelkey's various doctors recommended exercise and medication but never surgery. For example, the ALJ stated that in June 2001 the orthopaedic surgeon Dr. George Higley diagnosed Pelkey with degenerative disc disease of the cervical spine and sent Pelkey to one session of physical therapy for home exercise instruction. The record also

contains an evaluation by Dr. Beata Majewski on April 22, 2003, advising that Pelkey take two medications and that he "would greatly benefit from physical therapy or low impact aerobic exercise." The ALJ also noted Pelkey's testimony that "he has never had surgery on his back, and that his treatment has consisted of medication, physical therapy and ice packs for relief." Although Pelkey experienced some degree of pain, we find that good reasons and substantial evidence on the record as a whole support the ALJ's decision to discount Pelkey's complaint that his pain resulted in a total inability to work.

Second, Pelkey contends that the ALJ failed to consider the disability assessment by the VA. We disagree. The ALJ should consider the VA's finding of disability, *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998), but the ALJ is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits, 20 C.F.R. § 404.1504; *Fisher v. Shalala*, 41 F.3d 1261, 1262 (8th Cir. 1994) (per curiam) ("There is no support for [the claimant]'s contention that his sixty-percent service-connected disability rating equates with an inability to engage in any substantial gainful activity under social security standards.").

Although he did not specifically mention the 60 percent figure, the ALJ did not err because he fully considered the evidence underlying the VA's final conclusion that Pelkey was 60 percent disabled. The VA's 60 percent rating is found in an August 11, 2001, letter, while the evidence supporting that rating is located in the VA Rating Decision of August 6, 2001, which describes in detail a VA rating examination performed by Dr. Ky on May 22, 2001, and VA outpatient treatment reports, including x-rays of the spine taken on March 6, 2001, and the examination by Dr. Higley on June 28, 2001. The ALJ discussed the rating examination and Dr. Ky's diagnosis of low back pain with degenerative changes at the L1, L2 and L5 levels of the spine and bilateral pes planus (flat feet). The ALJ also mentioned the treatment reports. In

addition, the ALJ noted that the VA originally awarded Pelkey 20 percent disability for his back problems in 1985.

Pelkey argues that *Morrison* compels a different conclusion. *Morrison* held that the ALJ erred in giving no reasons for rejecting a VA rating of 100 percent disability because "an extensive physical examination documenting Morrison's medical problems, followed by a finding of a permanent and total disability by another government agency, all of which occupies some thirty pages in the record, merits more than simply an implicit rejection." 146 F.3d at 628. By contrast, here the ALJ did not ignore the VA rating but considered and discussed the underlying medical evidence contained in the VA's Rating Decision. The ALJ did not err in his consideration of the VA's disability determination.

Pelkey also argues that the ALJ erred in the second step of the analysis by concluding that there was "no evidence in the record concerning a diagnosis of carpal tunnel syndrome." This led to the ALJ's determination that Pelkey suffered from the severe impairments of degenerative joint disease of the cervical and lumbar spine, but not carpal tunnel syndrome. We need not address this argument because it has been waived, as Pelkey did not articulate it before the district court. *See Dixon v. Barnhart*, 353 F.3d 602, 606 (8th Cir. 2003); *Craig v. Apfel*, 212 F.3d 433, 437 (8th Cir. 2000).

In summary, substantial evidence in the record as a whole supports the ALJ's finding that Pelkey had the RFC to perform his past relevant work as a medical clinic manager and thus was not disabled under the Social Security Act. The ALJ arrived at this conclusion after considering objective medical treatment records, including those underlying the VA Rating Decision, the evaluation of the state agency medical consultant, and Pelkey's testimony, work history and activities.

## III. CONCLUSION

We conclude that the ALJ properly evaluated Pelkey's credibility and considered the VA's disability findings. Because the denial of disability insurance benefits is supported by substantial evidence on the record as a whole, the judgment of the district court is affirmed.

_____